SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| In the Matter of | ) Arizona Supreme Court |
| | ) No. JC-06-0002 |
| JACQUELINE McVAY, Justice of | ) |
| the Peace, | ) Commission on Judicial |
| | ) Conduct |
| Respondent. | ) No. 06-181 |
| | ) |
| | ) **O P I N I O N** |
| _____ | ) |

Review from the Commission on Judicial Conduct

**RECOMMENDATION REJECTED; REMANDED**
_____

JONES, SKELTON & HOCHULI, P.L.C.                          Phoenix
     By   A. Melvin McDonald, Jr.
Attorney for Jacqueline McVay

COMMISSION ON JUDICIAL CONDUCT                            Phoenix
     By   Linda Haynes, Disciplinary Counsel
Attorney for Commission on Judicial Conduct

WILENCHIK & BARTNESS, P.C.                                Phoenix
     By   Dennis I. Wilenchik
          William P. French
          Kathleen E. Rapp
Attorneys for Amicus Curiae Maricopa County Justice of the Peace
Bench
_____

**R Y A N**, Justice

¶1      This case requires us to decide whether the Commission

on Judicial Conduct (Commission) improperly considered the

effect a suspension would have on a judge's retirement benefits

in approving agreed-upon sanctions.  We hold that it did.

**I**

¶2      Judge Jacqueline McVay has served as a full-time

justice of the peace since January 1, 1989.  In 1994, Judge

McVay was informally disciplined by the Commission for "being late to court on numerous occasions without explaining the reasons for her tardiness to counsel, litigants, and witnesses who were waiting for trials to begin." In 2003, after receiving other allegations, the Commission reminded Judge McVay to begin court proceedings on time. In 2005, Judge McVay was censured for being habitually tardy. Judge McVay's punctuality improved for a time after her censure, but she arrived late to court on several occasions in 2005 and then began arriving late more often in 2006.

¶3 In May 2006, court staff filed complaints regarding Judge McVay's behavior. The complaints alleged that Judge McVay often blamed clerks for her tardiness, chastised staff in the "public areas," criticized clerks when files were not in order, and improperly interrupted meetings to require administrators, rather than available clerks, to look for files. The Commission filed formal charges against Judge McVay in October 2006. Count I charged Judge McVay with habitual tardiness and Count II charged her with improper judicial demeanor related to her treatment of staff.

¶4 Judge McVay and disciplinary counsel subsequently submitted an agreement to the Commission's hearing panel. As part of the agreement, Judge McVay conditionally admitted that her habitual tardiness violated Code of Judicial Conduct, Ariz.

2

R. Sup. Ct. 81, Canons 1(A) ("A judge should participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so the integrity . . . of the judiciary will be preserved."), 3(B)(8) ("A judge shall dispose of all judicial matters promptly, efficiently and fairly."), and 3(C)(1) ("A judge shall diligently discharge the judge's administrative responsibilities . . . and maintain professional competence in judicial administration . . . ."). Furthermore, she conditionally admitted that her absence from court during court business hours violated Canon 3(A) ("The judicial duties of a judge take precedence over all the judge's other activities."). She also conditionally admitted that by not reforming her behavior in response to previous discipline and censure she violated Canons 1 (requiring that "[a] judge shall uphold the integrity . . . of the judiciary"), 3 (requiring that "[a] judge shall perform the duties of judicial office . . . diligently"), and 3(C)(1). She agreed that her habitual tardiness constituted "conduct prejudicial to the administration of justice that brings the judicial office into disrepute," under Article 6.1, Section 4, of the Arizona Constitution. In addition, she conditionally admitted that several staff members requested transfers or left their employment in part because of her behavior. Consequently, Judge McVay also conditionally admitted that her treatment of

staff violated Canons 1(A) and 3(B)(4) ("A judge shall be patient, dignified and courteous to . . . [those] with whom the judge deals in an official capacity . . . ."). Under the agreement, the Commission would, in part, require Judge McVay to pay a fine of $6,300;[1] she also agreed to "a two-month reassignment to court duties to be determined by the Maricopa County presiding judge" and to attend courses "in time management and . . . human resources management."

¶5    The hearing panel initially "questioned the appropriateness of the proposed sanction" in light of Judge McVay's prior disciplinary record and the seriousness of the charges. Judge McVay's counsel "explained that he had determined after contacting the Elected Officials Retirement Fund that . . . if she were suspended without pay for two months, [she] would suffer a continuous financial loss in retirement that would greatly exceed the amount of compensation that would be lost as a result of suspension." After further

---

[1]    The Commission believes, incorrectly, that the fine represents two months of Judge McVay's salary; it considered the fine an additional formal sanction under Rule of the Commission on Judicial Conduct 18(e). Rule 18(e) provides that "[t]he commission may recommend the imposition of other formal sanctions consistent with these rules, including, but not limited to, the assessment of attorney fees and costs." We do not decide in this case, given Judge McVay's consent to imposition of the fine, whether the Commission would have the power under Rule 18(e) to impose a fine on a non-consenting judge.

deliberations, the panel unanimously agreed to accept an amended agreement that incorporated additional provisions, the most significant being that Judge McVay would agree to retire at the end of her term in December 2008.

¶6      Shortly thereafter, the parties filed an amended agreement containing the additional provisions. The hearing panel, through the presiding member, accepted the amended agreement and submitted its recommendation to this Court. The recommendation stated that "the hearing panel observed that [Judge McVay's] 2004 censure[2] would justify a recommendation for a suspension but acknowledged, after discussing the matter with both counsel, that such a suspension would disproportionately affect [Judge McVay's] retirement at the conclusion of her current term of office."[3]

¶7      Both parties waived their right to object to the hearing panel's recommendation and their right to petition this Court for modification or rejection of the recommendation. *See* R. Comm'n Judicial Conduct 29(a). We have jurisdiction under

---

[2]      The reference to 2004 is a mistake. Although a complaint had been filed in 2004 charging Judge McVay with tardiness, this Court censured Judge McVay for those charges in March 2005.

[3]      The amended agreement stated that the Commission would have recommended a suspension but for her "long and faithful service to the judiciary in her 18 years of dedicated and productive service." The Commission's recommendation, however, made no reference to Judge McVay's service in deciding that censure and a fine was an appropriate sanction.

Article 6.1, Sections 4, 5, of the Arizona Constitution and Rule 29(a) of the Rules of the Commission on Judicial Conduct.[4]

**II**

¶8        Because Judge McVay had been censured in 2005 for conduct similar to that charged here, the hearing panel initially considered suspending her for two months. The Commission's recommendation and the supplemental briefs of both parties acknowledge that the primary reason Judge McVay was not suspended was because of the adverse effect on her retirement benefits. Absent a suspension, at the end of Judge McVay's current term she will be eligible to receive her full retirement benefits for twenty years of judicial service.

¶9        It was improper for the Commission to consider collateral financial consequences in determining an appropriate

---

[4]    This Court may not exercise sua sponte review when the Commission on Judicial Conduct recommends censure alone. R. Comm'n Judicial Conduct 29(a) ("A recommendation of censure shall be final unless the judge or disciplinary counsel files a petition to modify or reject the recommendation as provided in paragraph (c)."). This Court does have the authority to review "[a]ll other recommendations for formal sanctions" on its own motion. *Id.* In addition to censure, the Commission recommended that Judge McVay pay a fine, which it viewed as a formal sanction under Rule 18(e). We therefore exercise sua sponte review of the entire recommendation, as the reviewable sanction is inseparable from censure. *Cf. In re Bemis*, 189 Ariz. 119, 122, 938 P.2d 1120, 1123 (1997) (holding in an attorney discipline case that because a probation order, a normally non-reviewable sanction, was recommended in conjunction with a censure, a reviewable sanction, this Court could review both sanctions as they were inseparable).

sanction.  "[O]ur goal in imposing sanctions is to protect the public and foster judicial integrity - not to punish."  *In re Lorona*, 178 Ariz. 562, 567, 875 P.2d 795, 800 (1994) (citing *In re Haddad,* 128 Ariz. 490, 492, 627 P.2d 221, 223 (1981); *see also* R. Comm'n Judicial Conduct 5.[5]  Taking into account the financial impact that a suspension would have on a judge would not "serve the objective of guarding the public's interest."[6] *In re Goodfarb,* 179 Ariz. 400, 403, 880 P.2d 620, 623 (1994). If financial consequences were permitted to be considered in determining sanctions for judicial misconduct, many judges could avoid appropriate sanctions.  The Commission, and this Court, must be guided by the goals of protecting the public and fostering judicial integrity, and not the collateral consequences a sanction may have on a judge.  Therefore, in

---

[5]     Rule 5 provides in part the following:

> The purpose of the judicial discipline . . . system is to protect the public and to maintain high standards for the judiciary and the administration of justice. Any disciplinary remedy or sanction imposed shall be sufficient to restore and maintain the dignity and honor of the position and to protect the public by assuring that the judge will refrain from similar acts of misconduct in the future.

[6]     In conjunction with lawyer discipline, we have similarly held that "[w]e do not consider the nature of the lawyer's practice, the effect on the lawyer's livelihood, or the level of pain inflicted when determining the appropriate sanction."  *In re Scholl*, 200 Ariz. 222, 224, ¶ 10, 25 P.3d 710, 712 (2001) (citing *In re Shannon,* 179 Ariz. 52, 71, 876 P.2d 548, 567

7

recommending censure and fine, the Commission improperly considered the financial consequences a suspension would have on Judge McVay's retirement benefits.

**III**

**¶10**      In the amended agreement, Judge McVay admitted the facts on the condition that the identified sanctions would be imposed.  Because we reject the Commission's recommendation, the agreement's terms preclude us from using the conditionally admitted facts to impose a sanction that we would consider appropriate.   Accordingly, we remand this matter to the Commission for further proceedings.


_____
Michael D. Ryan, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice

_____
(1994)).    We see no reason to treat judicial officers differently.

8